We're going to start with United States v. Dupree, so I bid you good morning. Thank you. Good morning, Your Honor. Let's get the names of the counsels right here. Thank you very much. Go right ahead. Thank you. May it please the Court, the Federal Defenders of New York, on behalf of Amari Dupree. Dupree's prior New York State conviction for attempted second degree robbery while aided by another is not a crime of violence under the guidelines. The New York offense does not satisfy section 4B1.2A1's elements clause. As this court held in Jones 1, New York robbery can be committed with a de minimis force, or indeed no force at all, as by blocking, bumping, or tugging. Jones 1 is no longer the law. I'm somewhat aware of that case. So my question is on the enumerated offense clause. Yes, Your Honor. Why isn't all robbery an enumerated offense, all New York robbery an enumerated offense of robbery? This court's decision in Walker explained that the generic definition of robbery, as an enumerated offense under the guidelines, requires a taking from the person or immediate presence of another. The New York Court of Appeals decision in Smith, reviewing the history of the robbery statute, squarely explains that New York robbery includes no such element. Includes no such element, but does it matter? That's my question, because generally speaking, robbery is not theft, it's more than theft, it's taking a property. And whether New York says personal property of another doesn't really make a difference. That it doesn't. Your Honor, this court has explained in Walker and again in Jones 2 that the procedure for analyzing whether a state offense is an enumerated offense under the guidelines asks whether there's a substantial correspondence between the two. That is, we look at the elements of the state offense and the elements of the federal predicate. Not only Walker, but a wealth of sources, including the majority of state criminal codes, the majority of the legal treatises. My assumption is that a person or a presence or a person of another is implicit in every robbery, whether or not it's spelled out. No, Your Honor. With respect, I think both the Court of Appeals decision in Smith, which reviews the statutory history and law, as well as a number of New York State cases cited in our brief. How do you have robbery if you don't take property from another person? Just as, I'll describe the New York cases that are relevant. I'm not talking about how you do it. I'm talking about the person or property, the person or presence of another. Not a question, we're not talking about violence now or force. Yes. We're just talking about how you accomplish robbery without taking the property from another. So in Sloan, the appellate division held that the evidence was sufficient to support a robbery conviction, where the defendant burglarized an unoccupied convenience store that was closed for the night, took merchandise from the closed and empty store, and on the way out, used force to escape the tenant of an attached apartment who confronted him. Well, isn't that an outlier? No. Well, Your Honor, it's not, because we also have- A peculiar set of facts. I mean, the state courts nod every now and then. We're not talking about the mainstream. This is second degree robbery. Correct. It's forcibly stealing. So, Your Honor, Sloan- Nobody there, who are you using force on? So, Your Honor, Sloan held that force was used against the person who interrupted the robbers as they were escaping. That's force. It's not an outlier. So let me say this, Your Honor. Someone was there. You can't use force against somebody who isn't there. That's right. But what was not done was a taking from that person. That is to say, the property taken was unattended at the time of the taking. And it's not an outlier, Your Honor. When that person arrived, it became attended. I mean, that person could have ignored it, but somebody chose to defend the property of another. So, therefore, the stuff was taken from that person. Your Honor, no, with respect, I think that's not supported by additional New York cases, including Gataway, which concerned, again, the nighttime burglary of a closed restaurant, followed by the handcuffing of the employees who arrived in the morning to open up. And a number of New York cases involving the shoplifting of unattended property, followed by a confrontation, most often with a store security guard. So, focusing on the moment of the taking, at the moment of the taking, the person or person- How is it complete? How's the robbery complete if the store detective is stopping you from leaving? So, indeed, the robbery is not complete, but the taking is complete. The taking is complete at the point at which the property, unattended and unguarded by anyone, is taken. The person who's taking the thing, if they can't take it out of the store and take it home. I mean, nobody takes a garment from a store for the purpose of walking it to the door and being stopped. So, certainly, I think we would say the statutory definition of robbery has been satisfied because the force must be used in the course of a larceny. But a larceny includes more than a taking. Under New York law, it includes the preparatory conduct, it includes the taking, and it includes the escape. The reason it matters, and we aren't just parsing words here, the reason it matters is we are trying to capture an element that elevates larceny to robbery, as a generic matter. This- Can I ask you a question? How can the error you posit be plain error if the district court reached the same result on this issue that this court reached in Smith just about a month ago? I recognize that Smith is under the 2015 version of the guidelines, so strictly speaking, it doesn't govern this case, strictly speaking. But the analysis is identical, and so how can it be plain, that is to say, obvious error? Several responses, Your Honor. First, of course, error can be plain in light of settled principles as well as precedents. And here we have two square principles. On the one hand, Walker requiring a taking from the person or presence of another. And on the other hand, New York law confirming that that element is not present in New York robbery. Smith, as Your Honor notes, was a residual clause decision. But more important, neither Smith nor the district court below was presented with this precise argument. And so if we're looking at Smith's reasoning, we take the reasoning based on the argument that was presented. If we're going to credit the reasoning, it seems anomalous to credit reasoning that wasn't responsive to a particular argument raised. And again, had Smith been based on the commentary, footnote three in Smith would have been unnecessary. Smith specifically limited its holding to cases involving the pre-amendment guidelines. If the commentary were driving the decision, that limitation would have been unnecessary. Now that the guidelines have been amended, robbery's been added to the list of specific offenses that are covered. That's right, and the commission- We think, therefore, that any change in the guidelines cuts against your position. Well, of course, we are entitled to the new guidelines, because we know that robbery counts under the residual clause of the pre-amendment guidelines. So we're focused on the new guideline. But the commission, in amending the guideline and moving robbery to the text, said it was not separately defining robbery because it was going to rely on existing case law for the definition of robbery. That case law included this court's decision in Walker, the 11th Circuit's decision in Lockley, which adopted Walker, both of which articulated a person or presence requirement. So the requirement we're urging is fully consistent with the sentencing commission's intent. You're aware of the fact that there is a prior case, Pereira-Gomez, which was submitted on March 9th. And I believe the panel was Judge Cabranes, Judge Carney, and Judge Caproni, and they have three issues in that case. One is whether attempted second degree robbery is a crime of violence. The second is whether all degrees of robbery under New York law correspond to the generic offense of robbery. And then the same question with regard to attempted robbery. So that will precede us and probably help us form our decision. I confess I have not read the briefs in that case. It's not a federal defender case. I would say, yes, this court's general rule is that a case submitted first has priority. Right, you should note that that is at 17, the case number is 17-952. My only question, again, not having read the briefs, would be whether the specific challenge to enumerated robbery that we've presented here was also made in Pereira-Gomez. That was under, yeah, that was under a 2015 version. That under the 2015 version of the guidelines, so also a residual clause sentence. Right. So then in that event, then no, I don't think that would dictate. They're looking at whether there's generic robbery. They're looking at the generic question based upon the commentary, I guess. Again, I would say, of course, this court's general practice is to respect earlier submitted cases. But if the specific challenge to enumerated robbery that we present here, namely that New York robbery is non-generic because it does not have a personal presence element. If that argument was not pressed in Pereira-Gomez, I think this court would be free to examine that issue. Is it your position that that's true even if, say in Smith, the issue had risen under the 2016 guideline, simply because the argument wasn't raised? Well, I think it would certainly be a tougher claim for us to make. What we have is the express- They decide the issue, and you read the opinion and say to yourself, well, what about this argument? And nobody had ever raised that argument, but they've still decided the issue, right? So I think what I would say is the following. It would be a tougher argument, no question, Judge Shea. What we have, however, is the express limitation of Smith's holding to pre-amendment cases. And we also have- We would have to depart from the analysis in Smith. We would have to, in effect, say they got it wrong. And this, no, but this court has said that when an issue merely lurks in the background of a case, and it's not squarely presented by the parties, and it's not squarely addressed by this court, no disrespect to the prior panel is embodied by a different opinion. Smith simply wasn't presented with this analysis. And so this court, reviewing all guidelines, questions de novo, reviewing questions of legal interpretation of the guidelines de novo, is free to hear and consider on the merits Dupree's claim. But let me just try and understand your argument one more time. If a person takes the property without violence in a store, and is confronted by the owner of the store on the way out the door, then at that point, I think you would agree that that would satisfy robbery. Would satisfy, it certainly would satisfy New York robbery. New York robbery. And then, but if the person is not confronted by the owner of the store, but is confronted by another customer of the store, you would say that is not robbery. No, I think New York, I think that's Sloan. Sloan involved a confrontation with the tenant of an attached apartment who does not appear from the opinion, owned the property. That would be robbery under New York law. But not federal. Right. Correct. And again, let me, Judge Walker, let me make my point as precise as possible. The argument is actually quite straightforward. Putting aside quantum of force, ownership of property, timing of the use of force. Generic robbery requires that the property be taken from the person of another or his immediate presence. New York does not. New York criminalizes the taking of unattended property followed by a use of force. In essence- How can you say that the inventory of a shop is unattended property? Because the shop is empty, your honor. In Sloan and Ganaway, the property was taken from empty shops. In the example that Judge Walker just gave you, the shop is not empty, the owner's there. So of course- And he doesn't have eyes on every single item in the store. So if you see somebody leaving, carrying a skateboard, he or she notices. Under the cap- You agree with that, right? That does fit New York property. That, yes, that too would fit New York property. And it does fit the generic property as well, if it's the owner of the store. I think- I was trying to draw a distinction between the owner of the store and a good Samaritan who wants to stop the crime. Let me address both. I think, Judge Jacobs, if the store owner is observing the property and observes the theft take place, yes, I would say that that property is essentially within the store owner's immediate presence. And Judge- You said observe the theft take place. Do you mean observe the removal of the skateboard from the counter? Or do you mean the person walking out with property that seems to be part of the inventory of the store? No, observe the, I think when we say taking from the personal or immediate presence of another, we mean either the property is removed from the victim's person, literally, or immediate presence. That is, the storekeeper observes the theft, the thief take the property, which is his property, from his immediate presence. That is, from across the counter or from behind the counter. But let me say two other things. Number one, Judge Jacobs, when applying the categorical approach the Supreme Court has told us in Moncrief, we consider the minimum conduct and we know that the minimum conduct under New York law is the theft of property that no one has seen taken and that was not in anyone's immediate presence. That's Sloan and Ganaway, unoccupied stores. Judge Walker, I'm not sure that the, who owns the property matters. I'm, certainly it doesn't matter as a matter of New York law, which we know from Sloan, because the- I would have thought you would have said that if I own the property and I'm the store owner, that my, it's being taken from my presence or person because I'm the owner of the property. Certainly if the store owner is there, certainly if the store owner is there and observes the theft, it's being taken, I would say, from his person or immediate presence. I think it's a trickier question. And that's different from the tenant scenario because the tenant, what, comes down later after they physically remove the property but haven't left the building yet? I think it's different from the tenant scenario because again, what the generic definition of robbery is training on is the immediate danger that arises when the owner or the good Samaritan is capable of stopping the taking as it's taking place. Such that force is used to overcome resistance to the taking or to compel the property owner or the good Samaritan to part with the property. When- The guy's got the skateboard in his knapsack, he's all packed up, he's ready to go, he's about to go out the door. The tenant comes in and says, what are you doing? And then he uses force. That's okay, that's New York robbery, but that's not federal robbery? I would say it's certainly New York robbery. And I would say what it is as a matter of federal law, if we're talking about generic federal offenses, is most likely a burglary plus an assault. And we know that that would not qualify as a guidelines crime of violence because the guidelines no longer include burglary as an enumerated offense. It's all part of the same transaction, it seems to me maybe there's a difference between that and just a separate burglary and an assault. I mean, it's all part of the same thing. He's prepared to use violence. One person shows up and it doesn't happen to be the owner, it's somebody else. And he then uses that. And that person wants to stop the robbery and therefore presumably take possession of the property. But the robber is taking the property and using force to do that. I mean, it just seems to be like we're kind of splitting hairs here. Well, again, let me say one thing. We know that that can satisfy New York law because we have a provision in the New York definition of robbery that includes the use of force for the purpose of retaining property after the take. Maybe the way for us to look at it is to take all of the states, and I don't know how many there are, that specify person and property of another and see how they've actually applied it. To come up with a generic, to see if the generic is broad enough to cover this instance. So, your honor, the Dupree has at least canvassed state statutory and case law and include a person or presence requirement. But I'm talking about the case law itself as opposed to what the statute says. I understand. The government in its response brief questions two of those states, Oklahoma and Washington. It does what your honor has suggested. The government was unable to elicit from those cases a principle that would also encompass New York law. Some of those statutes say person or custody or person or control, which is arguably broader than person or immediate presence, right? I think as Judge Jacobs was suggesting with the store owner hypothetical, yes. I think custody can certainly be broader than presence. Custody could encompass property that the store owner owns, but perhaps doesn't have immediate eyes on. Your point is New York robbery is even broader than that. You're exactly right, your honor, because we know from both Sloan and Ganaway that New York robbery encompasses takings in empty stores. Do you have a case, a New York case like the example discussed on page 38 of your brief and mentioned by the Law Reform Commission about the defendant forcing the victim to phone his office and direct an employee to take money from the safe and deliver it to the defendant's agent? No. That's an example that does show the outer limits, arguably, of eliminating the presence requirement, but there's been no case like that, right? No, that's true, your honor. The cases that we've identified as supporting our interpretation are principally Sloan, Ganaway, a number of appellate division decisions holding that larceny from the person is not a lesser included offense of robbery because robbery does not include the person or presence element. In the example that you gave earlier, you said that the federal offense, there would be two federal offenses. One would be a burglary and the other would be assault. But it seems to me that if it was charged that way and it was a conviction on both and the judge in sentencing decided to stack the sentences, there'd be a really good argument that that can't be done. Because you're breaking down the offense into instantaneous sequences. It's a choreography. And I'm not sure that we look at offenses that way. I don't think people who commit crimes view their offenses that way either. Well, again, your honor, it's because the, I think that's right. And let me pick up on the last sentence of what your honor said. In the case of, for example, Sloan, I think the intent to use force could have been formed and in fact most likely was formed after the taking was complete. It seems apparent that the robbers in Sloan thought they were burglarizing an unoccupied store and only used force when they were confronted on the way out. So in that sense, there is a rationale to segmenting the offense in the manner that I've discussed. And let me take a step back and say this. What we're proposing is not only respectful of the sentencing commission's manifest intent to incorporate the existing definitions of robbery, but it's also respectful of federalism concerns in the following way. The New York judiciary and the New York legislature have made a conscious choice to broaden the definition of robbery to encompass conduct that would not satisfy the generic meaning of that term. They've done that for domestic concerns, presumably to make it easier to prosecute offenses like these as robberies. This court, however, is confronted with a distinct question. This court is confronted with the question whether when applying a provision of federal law designed to capture the most violent recidivist offenders, it's logical to sweep into that group those convicted under broad state laws, broadened by the branches of state government for a distinct domestic purpose. We'll hear you on rebuttal. Thank you, Your Honor. May it please the court, Ian Richardson for the United States. Judge Shea, I'd like to start with a comment that you made, and that goes to the effect of Smith on this decision. As the court knows from the government's March 14th 28J letter, this court and Smith recently decided that New York robbery in the second degree is a crime of violence under the enumerated defense clause definition. The defendant is asking this panel of the court to answer the same question answered in Smith, but to do it differently. This court isn't, this panel is not permitted to do that absent a change, an intervening change in the law. Because of footnote three. Footnote three says, holding doesn't apply to the guidelines after August 2016 were expressly permitted to by Smith. I would- The question is whether we should. I'm not sure I agree with that, Judge. And the reason I don't agree with that is because if in a precedential opinion, this court applies an analysis that directly applies to the same question, I don't think that another panel of this court is permitted. Even when the panel that issued the opinion said in the footnote that our holding, let me read it. Our holding thus applies only to sentencing decisions made under the guidelines in effect before that date, namely August 1st, 2016. It did not restrict its analysis, though. It did not restrict the precedential value of the analysis. We're not bound by anything but holdings. I'm not sure that that's correct. I think, Judge, that while it recognized that the only issue, I think I understand that footnote to say, is that the court recognized that the only version of the guidelines before it was one that preceded an amendment. It did not have occasion to decide whether a change in the amendment, whether that amendment affected a change that would have affected the analysis. Now- I hear what you're saying, which is in substance, we would have to reject the analysis. Lawyers are usually happier explaining that a court shouldn't do something than explaining that they can't do it. I think that's right. In Smith, though, wasn't there also an alternative basis that was used, which was the residual clause? So, as I understood the court's decision in Smith, the court relied on your decision, Judge Walker, in Jones. And in specifically the language in Jones that said that it was the forcible stealing element of New York robbery that sufficed to establish a substantial correspondence between the New York offense of robbery and the generic offense of robbery. That is an application of the enumerated offense clause. The amended guideline has taken the enumerated offense clause from the guidelines commentary in the 2015 version of the guideline. And in the 2016 version of the guideline, moved that to the text. Now, the defendant does not argue that that should result in a different analysis. In fact, quite to the contrary, he, in his reply at page 24, points out that the Sentencing Commission made clear that it did not intend to effect a change in the analysis. That by moving it from the guidelines commentary to the text, the Sentencing Commission intended the previous cases, interpreting the enumerated offense clause, to continue to apply. Not that this argument that's being raised now simply wasn't raised in Smith or Jones, as far as you can tell. As far as I can tell, it was not. But I'm not sure that that matters for the point that you raised earlier, which is that courts, appellate courts, including the Supreme Court and this court, frequently decide questions, provide an answer to a question, but don't necessarily have every single argument that could potentially be raised in front of them. That doesn't mean, though, that that conclusion that the court reached in Smith doesn't bind future panels. What the defendant is asking this court to do is ask the same question, conduct the same analysis, but come up with a different answer to the question. And I would submit that this court's precedent doesn't allow, doesn't permit this panel to do it, unless the defendant identifies an intervening change in law that matters. And he does not. He explicitly does not. He says that the same analysis applies. So, I think that the initial question here is, can this court decide the question differently? What does it mean to take from the person of another? So, I think- The person of another. So, I- Me. Our surroundings. So, you know, this is an interesting question that the New York legislature attempted to answer in the 1960s. And that was, instead of drawing the same fine distinctions that Judge Walker, you referred to as hair splitting, it did away with the person or immediate presence requirement as an element of the statute to make clear that it was slightly, that the understanding of robbery was slightly broader than that. Now, the defendant has pointed out that the person or presence requirement exists in the statutory law of a number of different states. But as we pointed out in our brief, a review of the case law of many of those states reveals that there are, in fact, different applications that are more consistent with New York law. Even in states that have the person or presence requirement, there are state courts that have interpreted their own state statutes to avoid the hair splitting that Judge Walker, you commented on. But obviously, the New York legislature didn't consider it to be hair splitting because if they did, they wouldn't have gone to the trouble to make this change, right? And in fact, the commission came up with specific examples, one of which I read from page 38 of the brief, and said, we want to capture those and we can't now. So it's a substantive change, right? I think it's a substantive, I think when you're considering state law and the effect of state offenses, states have a couple of different ways of ensuring that their offenses cover the conduct that they want to criminalize. They can do it through legislation. They can have the courts apply a definition that is perhaps not one that other courts would necessarily have reached from reading the text of the statute, but state supreme courts are not so burdened. They can interpret state laws in a way that makes them broader. What the defendant did in his brief, in his opening brief, was identify state statutory law that included this text. But what he didn't do is he didn't go state by state and identify and the highest courts in those states had chosen to interpret it. And that's significant, because as we pointed out in our brief, just with two examples, Oklahoma and Washington. They have person or presence requirements, yet the highest courts in those states interpreted their statutes to achieve a result remarkably similar to what New York had chosen to do through legislation. So yes, you're correct, New York was trying to achieve a substantive result in the same way that the state supreme courts and the highest courts of other states chose to achieve the result. And I'll point out that while the government didn't attempt to exhaustively go through all 50 states and see how the state supreme courts in each of these states addressed it, this argument has been raised in additional appeals. For example, in the United States v. Terrence Johnson, which is going to be argued next month, the government in that case did a more exhaustive analysis of all the different state statutes. I'm not sure that that's, I think initially on plain air review, it's the defendant's burden to do that in the first instance. And so I'm not sure that it's a problem that we didn't do it in our appellate brief. But if the court's interested, there are other briefs in other cases where this issue has been raised that address the number of different states that have chosen to affect a gloss on the person of presence requirement. The language that we used in Jones, the ultimate Jones decision was, and we've defined forcible stealing, was in effect the robbery definition. The definition of forcible stealing is the standard element that is common to all New York robbery offenses. Right, and so that says that the use or threat of force upon another person in the course of committing a larceny for the purpose of either preventing or overcoming a resistance to the taking of the property or the retention of the property immediately after the taking. And there's another part too, it's the compelling the person to get the property. But taking that aside, if that's what New York holds, then there is no specific requirement of the personal property of another there. That it's force upon another person. That person doesn't actually have to be the owner of the property or the possessor of the property. That's correct, and that was the change that New York intended to affect through its legislative. Now it's your position, I take it, that the generic term encompasses that? It does, your honor, and the defendant made a slightly different argument about what generic robbery included in the district court. And so the district court had occasion to think about what is essential to generic robbery. And what she pointed out is that generic robbery, Judge Ross pointed out below, is that what distinguishes generic robbery from other types of theft offenses is the immediate danger to another person. Now, the defendant is saying that person has to be a person with property in his hands. Or at least extremely close by. But given- Or has some interest in the property. You're saying that it wouldn't have to be a person who has interest in the property. I'm not sure, and I think I have to agree with the defense here. I'm not sure it's significant that the person in fact holds an ownership interest in the property for this. If you are, for example, someone who has been tasked to mine the store, if you were a store detective or something like that, you don't have an ownership interest in that property. Yet, if someone were to use force- But he's drawing a distinction by trying to look at the tenant of a nearby building, or a passerby, or a good Samaritan, or a customer in the store who wants to stop a crime, something like that. What do you say to those people? I think that if the defendant uses force while attempting to flee with property against those people, that is robbery. It is sufficient under the generic offense of robbery. If somebody comes up to him and says, wait a minute, you can't be taking this property as a customer. Maybe he's a retired policeman or something like that. And the defendant punches him in the face and walks out, you would say that that fits. Yes. New York robbery and generic. Yes. What about the example I mentioned during the defendant's argument, and is at page 38 of the brief, and mentioned in the revision report. Defendant forces a victim to telephone his office and direct an employee to take money from the safe and deliver it to an agent of the defendant. That must be New York robbery, at least the commission thought. So, is it federal robbery? I think that's an interesting question. I'm not sure on that point, frankly, your honor. That is a little bit different than a lot of the other types of robbery offenses that other states have criminalized, both with or without a person or presence requirement. I'm not confident that that's the case. But I think to that point, the fact that New York hasn't decided a case like that as robbery is significant. Obviously, the commission's sort of intention is provide some evidence of what the content of New York robbery is. But I'm not sure, given that that was 50 years ago and there has not been a case that anyone can find that is consistent with those facts, I think that suggests strongly that that's not actually what New York robbery is. I'm not sure that that's, I mean, this is not an uncommon thing in the age of ATMs. To have a forcible removal of property from an ATM. I don't know where that fits into the picture. That's the person's property, I suppose. You could argue it's the bank's property. I think it certainly is someone's property. And I would agree that my inclination would be that using force on someone else and attempting to extract property would be sufficient to state robbery. I mean, in other circumstances, this court has said that, for example, there have been cases where the defendant has argued that using poison against someone is not sufficient. It is too indirect to constitute, for example, a use of violent force. But I think the court's approach has been to overlook that sort of hair splitting and look to what's really happening there and that there is a threat of force being exerted against the person to extract property. I certainly think that that could potentially be robbery, but as I said, I'm not sure. One's PIN number may very well be property. So if you extract that from somebody with the use of force, you're extracting something very valuable. Indeed, indeed, and a PIN number is a means to extract property that belongs to the person from whom the PIN number is taken. So there are going to be cases where there are these intervening steps that need to occur for the robbery to be completed and effected that doesn't make it not robbery. Thank you. Thank you, Your Honor. Thank you, Your Honors. First, I think as both Judge Shea and Judge Jacobs have indicated, Smith poses no binding obstacle to review of the question presented in this case. Nor does it pose a prudential obstacle for the simple reason that the Smith court was not presented with this argument. This court is free to apply de novo review and consider the question afresh. Judge Jacobs, you hit the nail on the head. Person, from your person. That's what generic robbery requires. That's what this court said in Walker. That was a definition reiterated by this court in Jones too. It was the- Or presence. It was the definition proposed by the government below and applied by Judge Ross below. And as the questioning in the New York case law makes clear, New York criminalizes takings in empty buildings. And it criminalizes the use of force against non-owners of the property who come on the scene long after the taking is complete. And it's not inappropriate to consider those cases. As the Ninth Circuit's decision in Strickland points out, in light of the minimum conduct rule, cases concerning the outer bounds of the robbery statute are exactly what this court is to consider. But we need a case, right? We can't just use our imagination, right? Yes, Your Honor. This court has to find a realistic probability of prosecution. We certainly have Sloan and Ganaway. As to the hypothetical that Your Honor has discussed involving- Somebody who's not there, right? The theft over the phone. We would argue that if a prosecution is permitted by the statutory language and contemplated by the legislature, that demonstrates a realistic probability. It's not additionally necessary for us to identify a case. Finally, I want to talk in practical terms about what the rule we're proposing means. It does not mean that no robberies will count under the guidelines. As we point out in our reply brief, many state robbery statutes will continue to count under the elements clause. In addition, many state robbery statutes, the majority of state robbery statutes, do include a person or presence requirement. Nor is it the case that a district court in sentencing needs to ignore the fact of a robbery, whether it counts under the guidelines or not. That's the import of this court's decision in Janow. If a district court is convinced that certain conduct has occurred in the real world, and that conduct is proved by competent evidence, the district court can consider that conduct as a 3553 factor. Judge Shea does that every day. This comes up in the context of priors, not in the current sentence, often. True. And so we're looking at whether or not there's an enhancement component, and that's based upon a sentence that's been imposed in the past and has nothing to do with the argument you're making now. Absolutely right. My point is only this, Judge Walker. Under Janow, and under ordinary principles of sentencing, the court first computes the guideline range. Indeed, and we're arguing that Judge Ross erred in her computation of the guideline range. And then the court is free to take a broader perspective and consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant, which would obviously include the defendant's prior criminal conduct. So again, we're not- You've done that here, and you obviously think you've got a chance at a better sentence if we vacate. We do, because we think it's at this point fairly well established that the guideline range has a powerful anchoring effect. And in this case, the guideline error increased the range from what we contend that the correct range was 37 to 46 months. Judge Ross applied a range of 57 to 71 months. She said she was giving a modest variance to 48 months. If a proportional variance were applied on remand, Dupree, who has now served 27 months of straight time, would be entitled to immediate release. Again, Judge Ross isn't required to give a proportional variance, but the parties would be free to present arguments as to why that would be appropriate. But again, Janow makes clear that when a district court short circuits the 3553 process by erring in its guidelines computation, this court's proper role is to vacate and remand. Why should a court that agrees with you, agree with you in a case in which it's performing plain error review? I mean, there is a certain amount of hair splitting and the issue is in flux. Your Honor, I would say this, and I'll address each prong. This court has said that a guideline error satisfies the first prong. This court has said that the second prong, plainness, can be satisfied if principles, not just precedents, but principles are plain. And here, we rely on two crystal clear principles. Walker's statement that generic robbery requires a taking from the person or immediate presence of another. And Smith, the New York Court of Appeals decision, Smith's statement, based on the legislative history and the statutory revision, that New York robbery does not. In addition, we cite in our briefs numerous cases of this court, including McCrimmon and Gomez, finding the third and fourth prongs of the plain error test satisfied based on comparable or indeed less severe guideline errors. McCrimmon, for example. Is the Smith case you're talking about the one that we decided last month? No, Your Honor, when I said, I spoke too fast. The Smith case I mentioned just a moment ago is the New York Court of Appeals decision in Smith. So those are the two plain principles we're relying on. This court's decision in Walker, which says that generic robbery has a person or presence element, and the New York Court of Appeals decision in Smith, which says that New York robbery does not. And so again, to return to the third and fourth prongs, McCrimmon, for example, was sentenced within what he contended was the correct guideline range. Unlike Dupree, who was sentenced above what we contend is the correct guideline range. And that error was found to satisfy the third and fourth prongs. Thank you. Thank you both for- Thank you, Your Honors. Expert argument. We will reserve decision.